RENDERED: APRIL 2, 2015
TO BE PUBLISHED

**Supreme Court of Kentucky**

2014-SC-000220-WC

MOSEN KHANI                                                       APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                       CASE NO. 2013-CA-002070-WC
WORKERS' COMPENSATION NO. 11-WC-73224

ALLIANCE CHIROPRACTIC;                                           APPELLEES
HONORABLE OTTO D. WOLFF,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

An Administrative Law Judge (ALJ) denied Mosen Khani's (Dr. Khani) claim for workers' compensation benefits. The Workers' Compensation Board (the Board) affirmed the ALJ, and the Court of Appeals affirmed the Board. On appeal to us, Dr. Khani argues the ALJ erred: (1) when he stated that he was treating Dr. Khani as a lay witness rather than as an expert witness; (2) when he determined that Dr. Khani had not suffered an injury as defined by the Act; and (3) when he did not award Dr. Khani temporary total disability income and temporary medical expense benefits. Having reviewed the record, we affirm.

**I. BACKGROUND.**

Dr. Khani filed an application for resolution of injury claim alleging that he suffered injuries to his upper extremities, neck, low back, left lower extremity, and dental bridge on February 28, 2011, August 22, 2011, and

August 23, 2011. According to Dr. Khani's claim form, these injuries occurred while he was "moving or assisting patients."

At the time of his alleged injuries, Dr. Khani was the owner and operator of Alliance Chiropractic, LLC (Alliance). Dr. Khani purchased workers' compensation insurance through Kentucky Employers' Mutual Insurance (KEMI) and was a covered employee under the policy. KEMI provided a defense on behalf of Alliance and, because it perceived there might be a conflict of interest, intervened and presented a separate defense in its own name. Both KEMI and Alliance contested Dr. Khani's claim arguing, in pertinent part, that his conditions pre-existed and were unrelated to the alleged work injuries.[1] During the course of litigation, the parties filed numerous medical records and reports and Dr. Khani testified by way of deposition and at the final hearing. We summarize that evidence below.

## A.    Dr. Khani's Testimony.

Dr. Khani has been a practicing chiropractor since obtaining his degree in 1988, and he has owned and operated Alliance since 2000. As a chiropractor, Dr. Khani is required to continuously bend, push, pull, twist, and lift patients. Dr. Khani stated that, because of the physical nature of his work, "there's not a day that I don't go to the office and don't get injured, just soft tissue injuries." As a result, Dr. Khani has suffered from aches and pains in his neck, back, shoulders, and upper and lower extremities. However, these symptoms changed following three work-related injuries.

_____

[1] KEMI is not participating in this Appeal.

On February 28, 2011, Dr. Khani experienced pain in his neck and left arm while he was adjusting a patient. He described the pain as being similar to what he had felt in the past but stated that it did not resolve so he sought treatment with Dr. Arar. Dr. Arar ordered diagnostic tests which, according to Dr. Khani, showed muscle wasting and a disc protrusion. Following those diagnostic tests, Dr. Arar prescribed medication.

On August 22, 2011, Dr. Khani experienced low back and left leg pain when he caught a patient who had lost his balance and was falling. On August 23, 2011, Dr. Khani experienced neck and bilateral shoulder pain while he was adjusting a patient. Dr. Khani treated conservatively following these incidents.

Dr. Khani also testified that, because of pain after the February 2011 injury, he clenched his jaw while treating patients and broke a dental bridge. However, Dr. Khani did not know the date this occurred.

Dr. Khani admitted that he had experienced similar symptoms prior to these injuries, and he admitted that he had received treatment for similar complaints, particularly in 2006. However, Dr. Khani stated that his pre-existing symptoms had abated prior to his 2011 injuries.

Since these injuries, Dr. Khani has "self-limited" his activities and sought relief through conservative treatment. However, he continues to have pain and stated that he experiences increased back pain and leg numbness if he stands for longer than an hour and that he has difficulty performing most of his job related activities. Dr. Khani estimated that he treated 4,800 to 5,000 patients

per year before the injuries. Since the injuries, his practice has decreased by 30 to 40 percent and Dr. Khani has considered selling Alliance.

**B.     Medical Evidence.**

Dr. Khani filed the October 6, 2011, May 16, 2012, and December 13, 2012 reports of Dr. Warren Bilkey. According to Dr. Bilkey, Dr. Khani suffered a neck injury on February 28, 2011, a lumbar spine injury on August 22, 2011, and bilateral shoulder injuries on August 23, 2011 while treating patients. Dr. Khani complained to Dr. Bilkey of neck pain with radiation into the left upper extremity, headache, low back pain with radiation into the left lower extremity, bilateral shoulder pain, and left upper extremity numbness and tingling related to the alleged work injuries. Dr. Bilkey noted that Dr. Khani had suffered from "chronic pain particularly in the neck and back and shoulders prior to these work injuries" as a result of the "cumulative . . . physical assertion" necessary to treat his patients. Furthermore, Dr. Bilkey noted that Dr. Khani had undergone diagnostic tests in 2006 for his complaints of pain and those tests revealed degenerative changes in the lumbar and cervical spine and evidence of carpal tunnel syndrome, findings similar to the results of testing following the 2011 injuries.

Following his examinations, Dr. Bilkey made diagnoses of work-related cervical strain, cervical radiculopathy, lumbar strain, and bilateral shoulder pain due to strain injuries and right shoulder labrum and rotator cuff tears. Dr. Bilkey assigned Dr. Khani a 15% impairment rating for his cervical spine condition and a 5% impairment rating for his lumbar spine condition.

However, because Dr. Khani had suffered from chronic neck and low back pain before the 2011 injuries, Dr. Bilkey attributed 3% of each of those impairment ratings to pre-existing and active pain. Dr. Bilkey assigned Dr. Khani a 14% impairment rating for his shoulder conditions, all of which he attributed to the work injury of August 23, 2011. Finally, Dr. Bilkey did not impose any permanent restrictions on Dr. Khani; however, Dr. Bilkey stated that he did not believe Dr. Khani would be able to continue working as a chiropractor long-term.

Alliance and KEMI filed the August 29, 2011[2] and September 13, 2011 reports of Michael M. Best, M.D. Dr. Khani complained to Dr. Best of left sided neck pain, left shoulder and arm pain, low back pain, right knee pain, and numbness and tingling in both hands. Following his examination and review of Dr. Khani's medical records, Dr. Best concluded that Dr. Khani's conditions were not work-related. In doing so, Dr. Best indicated that "none of these conditions were ever reported as work injuries" and that he knew of no "peer-reviewed, scientific studies that demonstrate chiropractors have an increased incidence of" cumulative trauma injuries. Therefore, Dr. Best concluded that Dr. Khani's conditions were "simply the 'natural aging process,'" and he assigned no permanent impairment or restrictions.

Alliance filed the April 4, 2012 and January 26, 2013 reports of Dr. Ronald J. Fadel. Dr. Khani complained to Dr. Fadel of low back pain with left

---

[2] It appears that Dr. Best evaluated Dr. Khani on August 18, 2011, but did not prepare his report until August 29, 2011.

leg sciatica and neck and left arm pain with left hand numbness and decreased left arm sensation related to injuries in February and August of 2011. Following his examination and review of Dr. Khani's medical records, Dr. Fadel stated that Dr. Khani suffered only "temporary sprain injuries of his neck, shoulder and lumbar spine as a result of mishaps at work." Dr. Fadel stated that eight to twelve weeks of treatment would have been reasonable for those work-related temporary sprains but anything beyond that would have been treatment for Dr. Khani's underlying pre-existing conditions. Finally, Dr. Fadel stated that Dr. Khani had no permanent impairment from his injuries, no permanent restrictions, and his symptoms were "little different from those [Dr. Khani] expressed in the past without trauma history."

KEMI filed the October 21, 2012 records' review report and the January 15, 2013 supplemental report of Dr. Russell L. Travis. Based on his review of the medical records and the transcript of Dr. Khani's deposition, Dr. Travis concluded that Dr. Khani had not suffered any permanent work-related injury. In reaching that conclusion, Dr. Travis stated that the medical records did not contain any specific reports of work-related injuries by Dr. Khani to his treating physicians. Furthermore, Dr. Travis noted that Dr. Khani had complained of and received treatment for similar symptoms prior to the alleged work injuries and that the results of Dr. Khani's imaging and electrodiagnostic studies were the same after the alleged work-injuries as they had been before. Finally, Dr. Travis stated that any permanent impairment Dr. Khani has would have pre-

existed the alleged work injuries, and Dr. Bilkey's opinions to the contrary were not supported by the medical records.

Finally, KEMI filed voluminous medical records from Norton Immediate Care Center, River City Orthopaedic Surgeons, Dr. Michael Moskul, Dr. Kittie George, and Kleinert, Kutz and Associates Hand Care Center showing treatment Dr. Khani received for complaints of symptoms in his neck, low back, shoulders, and upper and lower extremities in 1998, 2006, 2007, and 2008.

## C.    The Opinions Below.

Following the hearing, the ALJ rendered a 41 page opinion in which he set forth in great detail the evidence filed by the parties. Based on that evidence, the ALJ found that Dr. Khani had not suffered a work-related injury and dismissed his claim. In doing so, the ALJ relied primarily on the opinions of Drs. Travis and Best.

For reasons that are unclear, since none of the parties raised the issue, the ALJ stated in his opinion that:

> Plaintiff is a chiropractor, and, in his discovery deposition and
> Final Hearing testimony, he often utilized medical terms, provided
> medical explanations, and gave what would be considered medical
> opinions regarding the cause of his alleged injuries and resulting
> limitations. It is noted Plaintiff is not considered an expert witness
> herein, but is considered to be only a lay witness.

Dr. Khani appealed to the Board arguing, as he does here, that the ALJ's dismissal of his claim and the ALJ's finding that he is not an expert were erroneous. The Board affirmed, finding that there was sufficient evidence of substance to support the ALJ's finding that Dr. Khani had not suffered an

7

injury. As to the ALJ's finding that Dr. Khani was not an expert, the Board noted that Dr. Khani had not raised that issue on reconsideration, which limited its review to whether there was "substantial evidence contained in the record to support the ALJ's conclusion." The Board, while not directly addressing the ALJ's determination to treat Dr. Khani as a lay witness, found there was substantial evidence to support "the ALJ's ultimate determination and no contrary result [was] compelled."

Dr. Khani sought review by the Court of Appeals, which affirmed the Board. The Court of Appeals, as did the Board, held that there was sufficient evidence of substance to support the ALJ's finding that Dr. Khani had not suffered an injury. As to the ALJ's finding that he would not treat Dr. Khani as an expert, the Court stated as follows:

> Kentucky Rules of Evidence (KRE) 702 provides that expert testimony must be based on sufficient data or facts, the product of reliable principles and resources, and that the principles and methods have been reliably applied to the facts of the case. In the matter at bar, ALJ Wolff made specific findings that some of [Dr.] Khani's testimony was evasive and, in the ALJ's view, formulated to support his claim for benefits. The ALJ has the sole province to determine the quality, character and substance of the evidence and to draw all reasonable inferences from that evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985). The trial court is presumed correct in its rulings and judgments, and the burden rests with the appellant to overcome that presumption. *Caudill v. Caudill*, 212 Ky. 433, 279 S.W.656 (1925). [Dr.] Khani has cited no precedent for the error he asserts, and has not overcome the presumption of correctness in the ALJ's disposition of this issue. Accordingly, we find no error.

*Khani v. Alliance Chiropractic*, No. 2013-CA-002070-WC, 2014 WL 1159795, at *3 (Ky. Ct. App. Mar. 21, 2014).

## II. STANDARD OF REVIEW.

As fact finder, the ALJ was free to believe or disbelieve parts of the evidence from the total proof, no matter which party offered it. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977). Furthermore, the ALJ had the sole authority to judge the weight, credibility, substance and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Dr. Khani had the burden of proving every element of his claim, including that his condition is related to a work injury. *Gibbs v. Premier Scale Co./Indiana Scale Co.*, 50 S.W.3d 754, 763 (Ky. 2001). Because Dr. Khani failed to convince the ALJ, he must establish on appeal that the evidence was so overwhelmingly favorable "as to reasonably compel a finding in his favor." *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). With these standards in mind, we address the issues raised on appeal.

## III. ANALYSIS.

### A. Dr. Khani did not offer any expert opinions; therefore, the ALJ's determination to treat Dr. Khani as a non-expert was not erroneous.

On appeal, Dr. Khani argues that the ALJ's determination to treat him as a lay rather than an expert witness was error. Therefore, Dr. Khani asks us to remand this matter to the ALJ so that he can "fully consider the expert opinions of Dr. Khani and . . . provide an appropriate analysis based upon the entirety of the lay and medical evidence." In support of his argument, Dr. Khani notes that, as a duly licensed chiropractor, he is a physician pursuant to KRS 342.0011(32), and therefore believes the ALJ should have treated his

9

opinions as "expert opinions." Alliance argues that the ALJ's determination was correct because the ALJ found Dr. Khani's testimony to be "evasive," "contrived," and self-serving, thus removing Dr. Khani from the realm of the "unbiased, objective witness or expert."

Initially, we note that the parties only objected to Dr. Khani's testimony when he speculated about the potential value of Alliance. The parties did not object to any of Dr. Khani's other testimony, and they did not question whether Dr. Khani was or could testify as an expert witness. Furthermore, none of the parties raised this as an issue until the ALJ *sua sponte* included it in his opinion. It is unclear why the ALJ considered this an issue; however, now that it is one, we must address it because the analysis by the ALJ and the Court of Appeals was faulty.

The key question is not whether Dr. Khani was an expert; it is whether he rendered any opinions that could be deemed "expert opinions." KRE 701 provides that non-expert witnesses may provide opinion testimony if the opinions expressed are: "(a) Rationally based on the perception of the witness; (b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 7.02." None of the participants involved in this litigation have set forth exactly what they believe those opinions were. Therefore, we have reviewed Dr. Khani's testimony and, in summary, he testified about what he was doing when injured; what symptoms he felt after each of his injuries; what treatment he sought as a

10

result of his symptoms; how his symptoms have limited his ability to conduct his activities; and how his post-injury symptoms differed, if at all, from prior similar symptoms. In giving that testimony Dr. Khani may have used some medical terminology; however, his testimony did not otherwise differ significantly from the testimony given by nearly every workers' compensation claimant. Furthermore, Dr. Khani's testimony, to the extent it contained opinions, contained opinions based on Dr. Khani's perceptions of his condition/symptoms, not on his "scientific, technical, or other specialized knowledge." KRE 701. Therefore, Dr. Khani's testimony was not expert opinion testimony. While it is true that Dr. Khani's perceptions are necessarily filtered through his training and expertise as a chiropractor, his testimony was purely personal in nature, describing his claim as any claimant is entitled to do. This analysis can be extended to physicians, nurses, or other medical personnel who may find themselves claimants in a worker's compensation claim or plaintiffs in a personal injury action.

Because we believe it misstates the law, we must next address the opinion of the Court of Appeals on this issue. The Court of Appeals correctly set forth the criteria to be considered when determining whether to admit expert opinion testimony, *i.e.* it must: "(1) . . . [be] based upon sufficient facts or data; (2) .. . . [be] the product of reliable principles and methods; and (3) [t]he witness [must have] applied the principles and methods reliably to the facts of the case." KRE 702. The Court of Appeals, apparently based on the preceding criteria, found that the ALJ was justified in treating Dr. Khani as a lay witness

11

because the ALJ found Dr. Khani's testimony was self-serving and less than straightforward. We note that the testimony of many retained experts would arguably run afoul of one or both of these criteria. And, while the ALJ's findings regarding Dr. Khani's testimony certainly influence the weight to be afforded that testimony, they are not findings that address the criteria for determining the admissibility of expert opinion testimony. As set forth in KRE 702, findings regarding the sufficiency of the facts or data and the reliability of the means and principles used to interpret the facts or data are necessary precursors to an expert witness opinion admissibility determination. The ALJ made no findings regarding any of those criteria. Therefore, the Court of Appeals's reference to and apparent reliance on KRE 702 was misplaced.

Furthermore, the issue created by the ALJ was not whether to admit Dr. Khani's testimony, but how to characterize it'. As set forth in KRE 701, the distinction between expert opinion testimony and lay opinion testimony is the basis for the testimony. If the opinion is based on the witnesses' perceptions, as Dr. Khani's was, it is lay witness opinion testimony. If the opinion is based on "scientific, technical, or other specialized knowledge," it is expert witness opinion testimony. KRE 701. In reviewing the ALJ's characterization of Dr. Khani's testimony, the Court of Appeals should have used KRE 701, not KRE 702. Had the Court of Appeals used the correct rule, we feel certain it would have concluded, as has this Court, that Dr. Khani simply did not provide any expert witness opinion testimony.

Finally, Dr. Khani appears to have the appropriate credentials to offer expert opinion testimony, and his status as a claimant would not necessarily have excluded him from doing so. However, in this case, he simply did not do so. Based on the preceding, although it appears to have been completely unnecessary, the ALJ's determination to treat Dr. Khani's testimony as lay witness opinion testimony was not erroneous.

**B.** **The ALJ's finding that Dr. Khani had not suffered a work-related injury was supported by substantial evidence.**

KRS 342.0011(1) provides, in pertinent part, that:

> "Injury" means any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include the effects of the natural aging process[.]

Dr. Khani argues the ALJ "misinterpreted" the medical evidence in finding that Dr. Khani did not suffer a work-related injury. Furthermore, he argues the ALJ's finding was "an arbitrary abuse of discretion and against the overwhelming weight of the medical and lay evidence." In support of his argument, Dr. Khani notes that his testimony regarding the three work-related incidents is uncontroverted. However, whether the incidents Dr. Khani described occurred was not the only question before the ALJ. The ALJ also had to determine if those incidents caused an injury. As noted above, Dr. Travis opined that all of Dr. Khani's symptoms and diagnostic test results pre-existed the reported incidents and were not altered by those incidents. Dr. Travis then concluded that Dr. Khani had not suffered an injury as a result of those

13

incidents. Dr. Best stated that he found "no objective evidence" that Dr. Khani had any work-related conditions, and he opined that there were no studies supporting Dr. Khani's alternative theory that his conditions could be the result of cumulative trauma. As Dr. Khani notes, there was evidence to the contrary, specifically his own testimony that his symptoms changed and the opinion of Dr. Bilkey that the incidents did rise to the level of work-related injuries. Furthermore, we note that Dr. Fadel's opinion would have supported a finding of at least temporary injuries. While another ALJ, and even members of this Court, might have found Dr. Bilkey's or Dr. Fadel's opinions to be more persuasive, nothing about those opinions compelled such a finding. Drs. Travis and Best extensively and in detail reviewed and summarized Dr. Khani's medical records and set forth their reasons for their opinions, and we cannot find, as a matter of law, that the ALJ erred in relying on those opinions.

Finally, Dr. Khani notes that the ALJ stated in his opinion that Dr. Khani had not presented any evidence of a "structural change" as a result of the injury. Dr. Khani points to that statement as evidence that the ALJ misconstrued the law. Dr. Khani is correct that the law does not require a claimant to prove a structural change to prove an injury. *See Staples, Inc. v. Konvelski,* 56 S.W.3d 412, 415 (Ky. 2001). However, as the ALJ noted in his order on reconsideration, he understands a finding of a "structural change" is not a necessary prerequisite to a finding of a work-related injury, and he did not require Dr. Khani to prove such a change. Therefore, Dr. Khani's argument

14

that the ALJ's use of that phrase undermines the opinion is without merit, and we affirm the ALJ's finding that Dr. Khani did not suffer a work-related injury.

## C. Because the ALJ found no work-related injury, there could not have been a temporary work-related injury.

As we understand it, Dr. Khani is arguing that the ALJ was required to determine whether his injuries were permanent or temporary, and whether he was entitled to temporary benefits. Dr. Khani is correct that Dr. Fadel's opinion would have supported a finding of a temporary injury and entitlement to temporary benefits. However, it is axiomatic that, before there can be a temporary injury, or a permanent injury for that matter, there must first be an injury. Once the ALJ found that Dr. Khani had not suffered an injury, making a determination as to whether the non-injury was temporary or permanent would have been a trip down the proverbial rabbit hole. Therefore, we discern no error in the ALJ's failure to make the requested findings or in his failure to award temporary benefits.

## IV. CONCLUSION.

For the foregoing reasons, we affirm.

All sitting. All concur.

15

COUNSEL FOR APPELLANT:

Charles E. Jennings


COUNSEL FOR APPELLEE:

Stephanie Letitia Kinney
Brian T. Gannon
Fulton & Delvin, LLC

Barry Lewis
Lewis and Lewis Law Offices