RENDERED: DECEMBER 18, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0501-MR

AIRAN HERNANDEZ MENDEZ                                         APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE TRACY E. DAVIS, JUDGE
NO. 22-CR-001602

COMMONWEALTH OF KENTUCKY                             APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Airan Hernandez Mendez was convicted by a Jefferson County jury of three counts of sodomy in the first degree, two counts of sexual abuse in the first degree, and a single count of distribution of obscene matter to a minor. He was sentenced to twenty years' imprisonment and now appeals as a matter of right.[1] Following a careful review, we affirm.

**FACTS AND PROCEDURAL HISTORY**

In 2020, Hernandez Mendez and his twin brother moved in with Hernandez Mendez's girlfriend, her son and five-year-old twin daughters, M.R. and D.R.[2] The children referred to Hernandez Mendez as "dad" or "stepdad"

---

[1] KY. CONST. §110(2)(b).

[2] We use initials to protect the privacy of the minor victims. *See* Kentucky Rules of Appellate Procedure (RAP) 31(B).

although he and their mother were not married.  According to M.R., her mother slept soundly, especially after Hernandez Mendez would bring her water.  At times, Hernandez Mendez would spray a foul-smelling substance[3] from a pink spray bottle onto a sock and give it to her mother who would then fall fast asleep.

In mid-2021, shortly after she turned six years old, Hernandez Mendez began sexually assaulting M.R.  While her mother was sleeping, Hernandez Mendez would awaken M.R. and lead her to the home's basement where two beds were located.  He would then remove her clothing and his own and do "weird things" to her.  Hernandez Mendez would suck on her breasts, touch her "where [she] pee[s] and poop[s]" with his penis, and insert his penis in her mouth and anus.  M.R. stated Hernandez Mendez would sometimes place his penis in her mouth and move back and forth until "in the long thing, there was a little hole in the top [and] a white thing" that was "slimy" would come out into her mouth which she would then spit out.  Hernandez Mendez also digitally penetrated her on several occasions.  When she asked him why he did those things to her, Hernandez Mendez showed her videos "of dads doing that to their daughters, of boys doing it to grownup girls."  M.R. indicated the sexual abuse occurred "a lot of times" when she was six and seven years old.  She stated her twin sister, D.R. woke up one night and witnessed the abuse.

---

[3]  M.R. stated the substance smelled "like a fart."

M.R. did not initially report the abuse to anyone because she was scared of Hernandez Mendez. She said he would sometimes hit her, grab her hair, place a pillow over her face, or grab her very hard. He also hit and punched her mother "a lot." Hernandez Mendez told M.R. not to talk about the sexual abuse or he would throw her out of the house. He also threatened to kill her and her entire family.

In June 2022, while staying with her grandmother, M.R. disclosed the abuses inflicted on her and her mother. The grandmother had her English-speaking daughter contact Child Protective Services ("CPS"). When CPS failed to timely respond, the grandmother contacted Louisville Metro Police and took the twins to Norton Children's Hospital. The girls discussed the abuse with hospital staff for several hours, culminating in a physical examination by Dr. Britt Anderson. Dr. Anderson observed no noticeable injuries to M.R.'s genitals or anus. After discussing her findings with a child-abuse specialist, Dr. Anderson discharged the girls. No safety plan was finalized nor implemented.

A subsequent police investigation headed by Detective Michelle Rusch quickly followed. Based on the investigation, the twins were removed from their mother's care and placed with their grandmother. The girls participated in forensic interviews wherein they detailed the sexual abuse perpetrated by Hernandez Mendez.

Shortly thereafter, police officers went to the family home to execute a search warrant. The search uncovered numerous electronic devices, digital storage cards, a flash drive, a digital camera, several adult sex toys, and a color

3

copy of the Kama Sutra. Many of these items were located in the basement where M.R. indicated the abuse had occurred. Because of the length of time between the alleged assaults and the search, police did not attempt to collect any DNA samples. A forensic search of the electronic devices and storage media revealed pornographic photographs and videos.

Hernandez Mendez was arrested that day. In an interview with Det. Rusch, he denied all of the abuse allegations. A Jefferson County Grand Jury indicted him on numerous charges. Concurrent with the criminal action, the Jefferson Family Court addressed the abuse allegations. The twins were inconsistent in their statements to the Family Court Judge, with both indicating the sexual abuse had not, in fact, happened. During the criminal jury trial, both girls testified they had lied to the Family Court Judge because they did not fully understand the judge and they were scared of Hernandez Mendez. At the conclusion of all the proof, the jury acquitted Hernandez Mendez of intimidating a participant in a legal proceeding but convicted him on the remaining counts. The trial court imposed the jury's recommended sentence of twenty years' imprisonment. This appeal followed.

**ANALYSIS**

Hernandez Mendez raises four allegations of error in seeking reversal. First, he asserts the trial court erroneously admitted inadmissible opinion testimony from Det. Rusch and Dr. Anderson. Second, he contends he was entitled to a directed verdict on the charge of distribution of obscene matter to a minor. Next, he argues the Commonwealth was erroneously permitted to

4

introduce evidence of other bad acts in contravention of KRE[4] 404. Finally, Hernandez Mendez believes the trial court erred in refusing to instruct the jury on lesser-included offenses to sodomy in the first degree.

## I. Testimony from Det. Rusch and Dr. Anderson was not improper.

Hernandez Mendez asserts the Commonwealth was improperly permitted to elicit impermissible testimony from Det. Rusch regarding child sexual abuse accommodation syndrome ("CSAAS"). He further asserts Dr. Anderson's testimony exceeded the limits for a fact witness under KRE 701 when she offered medical opinions. Both contentions are without merit.

During Det. Rusch's cross-examination, Hernandez Mendez attempted to cast a cloud on the investigation by questioning various actions and inactions taken by police including the failure to swab the basement for DNA or use a "blacklight resource kit" to look for biologic evidence. In response, Det. Rusch stated it was not uncommon in delayed disclosure cases to forego the use of some evidence collection methods. On redirect, Det. Rusch explained the majority of her caseload within the Crimes Against Children Unit were delayed disclosure cases in which a report is not made for months or even years after an assault occurs. She further explained that investigations and forensic evidence collection techniques were different in those types of cases due to the passage of time.

---

[4] Kentucky Rules of Evidence.

Hernandez Mendez contends Det. Rusch's discussion of delayed disclosures was impermissible CSAAS testimony which bolstered M.R.'s testimony. He asserts this testimony substantially influenced the jury's verdict, thereby mandating reversal. Although we agree CSAAS testimony is not permitted under Kentucky law,[5] we disagree that Det. Rusch's testimony can be so classified.

In *Newkirk v. Commonwealth,* 937 S.W.2d 690, 690-91 (Ky. 1996), this Court noted that "[i]n an unbroken line of decisions . . . this Court has repeatedly expressed its distrust of expert testimony which purported to determine criminal conduct based on a perceived psychological syndrome." The basic rule prohibiting the use of CSAAS testimony was set out in *Kurtz v. Commonwealth* as follows:

> [W]here a victim had delayed reporting of abuse, we held improper the testimony of a seasoned child sex abuse investigator stating that it was common, in her experience, for sexually abused victims to delay reporting of the abuse. . . . We held that "a party cannot introduce evidence of the habit of a class of individuals either to prove that another member of the class acted the same way under similar circumstances or to prove that the person was a member of that class *because* he/she acted the same way under similar circumstances."

172 S.W.3d 409, 414 (Ky. 2005) (quoting *Miller v. Commonwealth,* 77 S.W.3d 566, 571-72 (Ky. 2002)).

---

[5] The theory of CSAAS was first introduced in 1983. *See* Roland Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177 (1983). Kentucky's prohibition on CSAAS evidence can be traced back to *Bussey v. Commonwealth*, 697 S.W.2d 139 (Ky. 1985), wherein it was held CSAAS lacked established scientific credibility warranting its admission. The exclusionary rule has been consistently upheld for the past four decades.

Here, Hernandez Mendez alleges Det. Rusch inferred M.R. must have been a victim of sexual abuse because she delayed reporting her abuse, and such delays are common among other child abuse victims in similar circumstances. A review of Det. Rusch's testimony, however, reveals a fatal flaw in Hernandez Mendez's logic. Nowhere in her testimony did Det. Rusch compare M.R. to other victims, state or infer M.R. acted consistently with other victims, or offer an opinion as to M.R.'s credibility. Rather, the challenged statements related to the actions Det. Rusch took during the investigation to rebut the inference from Hernandez Mendez that the investigation was unreliable or incomplete. Her discussion of delayed disclosure cases was limited to her experiences and knowledge relative to the differing investigative and evidence collection methodologies utilized in such cases as compared to "fresh" reports of abuse. Her testimony was not improper and cannot be characterized as having a propensity to "invade the province of the jury by unduly influencing its assessment of credibility." *Newkirk,* 937 S.W.2d at 693.

Hernandez Mendez next argues that Dr. Anderson, the twins' treating physician from Norton Children's Hospital, was testifying as a fact witness rather than as an expert and that her testimony exceeded the scope allowable under KRE 701 when she offered a medical opinion. He asserts Dr. Anderson was not a lay witness but instead was allowed to testify as an undisclosed expert witness. Because she had not been qualified to testify as an expert pursuant to KRE 702, Hernandez Mendez contends Dr. Anderson's medical

7

opinions should have been excluded and she should have been limited to testifying only as to her observations as noted in the victim's medical records.

KRE 701 limits witnesses not testifying as experts whereas KRE 702 sets forth the appropriate bases for expert testimony. To distinguish lay and expert testimony, "the key question is not whether [the witness] is an expert; it is whether he rendered any opinions that could be deemed 'expert opinions'" *Khani v. Alliance Chiropractic*, 456 S.W.3d 802, 807 (Ky. 2015).

> The introduction and reliability of the evidence is determined not by asking whether the *witness* is lay or expert, but, instead, by asking whether the *testimony* to be offered is lay or "scientific, technical, or other specialized knowledge." If it is of the former, then Rule 701 is applicable. If it is of the latter, then Rule 702 must be used.

KRE 701, n.1 (Evidence Rules Review Comm'n). Lay opinion testimony admissible under KRE 701 is described by Professor Lawson as "little more than a shorthand rendition of facts that the witness personally perceived." *Kentucky Evidence Law Handbook* § 6.05[2][a], 416 (quoting 4 McLaughlin, Weinstein's Federal Evidence § 701.03[1] (2d ed. 2013)). The purpose of KRE 701(c) is specifically to prevent counsel from avoiding the reliability standards established in *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579 (1993) "by the simple process of offering 'scientific, technical, or other specialized knowledge' evidence through a witness that an attorney sought to identify as a 'lay witness.'" KRE 701, n.1 (Evidence Rules Review Comm'n).

Our review of the testimony reveals no violation of KRE 701 or KRE 702. Dr. Anderson first testified regarding her education, training, and experience in

conducting pediatric sexual assault examinations. She then discussed her personal observations of M.R., the actions she took, her notes contained in the medical records, and the reasoning behind the course of treatment she chose to pursue. She indicated it was not uncommon for victims of sexual abuse to have no visible physical injuries and that normal examinations were far more common. When asked about the physiology of the anal region, Dr. Anderson stated the type of tissue in the anus, known as mucosa, is similar to the tissue in the mouth, heals quickly, and is "stretchier" than other tissues. Hernandez Mendez immediately objected and, following a bench conference, the Commonwealth's questioning moved on to other topics. Dr. Anderson was extensively cross-examined, her reported findings were called into question, and her credibility under the circumstances was challenged.

Hernandez Mendez takes issue with Dr. Anderson's testimony relative to her finding that M.R. had no noticeable injury to her anal region and her further explanation that such tissue stretches and is more flexible than other tissue thereby making a lack of visible injuries unsurprising. He further asserts that Dr. Anderson lacked the qualifications and experience to be qualified as an expert on child sexual abuse, thus rendering any of her expressed opinions infirm.

Trial courts are granted broad discretion to determine whether to qualify a witness as an expert. *Kemper v. Gordon*, 272 S.W.3d 146, 154 (Ky. 2008). Additionally, the "trial court has wide latitude in deciding *how* to test an expert's reliability and in deciding whether or when special briefing or other

9

proceedings, *i.e.*, at a *Daubert* hearing, is needed to investigate reliability." *Dixon v. Commonwealth*, 149 S.W.3d 426, 430 (Ky. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Here, we discern no attempt by the Commonwealth to avoid the *Daubert* requirements. Dr. Anderson was presented as a fact witness who testified to her own personal observations and actions as a treating physician. Further, her qualifications were sufficient for the trial court to determine she was qualified to make the fleeting statements relative to the anatomical makeup of the anus and the impact that could have on a physical examination.

> Therefore, we find no violation of KRE 702's requirement that an expert witness must be qualified. Furthermore, we find no violation of KRE 701 because the evil that this rule seeks to avoid, the introduction of unreliable expert opinions through a lay witness, was prevented by Dr. [Anderson's] qualification pursuant to KRE 702.

*McDaniel v. Commonwealth*, 415 S.W.3d 643, 655 (Ky. 2013).

## II. Directed verdict was unwarranted.

Next, Hernandez Mendez argues there was a failure of proof on the charge of distribution of obscene matter to a minor. He argues he was entitled to a directed verdict of not guilty and the trial court erred in denying his motion.

The standard for considering motions for directed verdict in criminal cases has been established for decades:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of

10

> ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991). "[T]here must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 187-88. On the contrary, "[s]o long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied." *Taylor v. Commonwealth,* 617 S.W.3d 321, 324 (Ky. 2020). When reviewing a trial court's decision regarding directed verdict in a criminal case, our test "is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham,* 816 S.W.2d at 187.

Here, Hernandez Mendez asserts he was entitled to a directed verdict on the charge of distribution of obscene matter to a minor. He contends the Commonwealth produced no evidence the videos he allegedly showed to M.R. following one instance of sexual abuse was "obscene" because M.R.'s description of them was only vaguely descriptive. Thus, he believes the Commonwealth failed to prove an essential element of the crime. We disagree.

At trial, M.R. testified that after she questioned why the abuse was occurring, Hernandez Mendez showed her videos of people engaging in sexual acts. In her youthful parlance, she indicated the people were doing "nasty

11

stuff" which is also how she described the acts Hernandez Mendez committed against her. She had previously testified in detail about the sexually abusive acts, including digital-anal penetration, penile-anal penetration, and oral sodomy. Det. Rusch testified that the electronic devices and storage media seized following Hernandez Mendez's arrest contained pornographic images and videos.

When taken in the light most favorable to the Commonwealth, M.R.'s testimony describing the videos she saw and the acts occurring therein, coupled with Det. Rusch's testimony, certainly constituted more than a mere scintilla of evidence that the materials were obscene. *Taylor*, 617 S.W.3d at 324. Moreover, we have often noted that "direct proof of guilt is not necessary. Instead, the Commonwealth can prove all the elements of a crime by circumstantial evidence." *Southworth v. Commonwealth*, 435 S.W.3d 32, 42 (Ky. 2014). Questions relative to the weight and credibility of the testimony were properly put to the jury and we cannot conclude it would have been clearly unreasonable for the jury to conclude Hernandez Mendez showed M.R. an obscene video and to find him guilty of the charged offense. *Benham*, 816 S.W.2d at 187. Accordingly, the trial court properly denied the motion for directed verdict on the offense of distributing obscene matter to a minor.

### III. Other bad acts evidence was not inadmissible.

For his third contention of error, Hernandez Mendez argues the trial court improperly permitted the Commonwealth to introduce inadmissible evidence of other bad acts including his physical abuse of the twins and their

12

mother, drugging the mother with a foul-smelling chemical sprayed on a sock, and giving M.R. preferential treatment. He alleges the Commonwealth failed to timely notify him of its intent to introduce this evidence and further that none of the evidence was relevant.

"Trial courts must admit evidence under KRE 404(b) 'cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime.'" *Riggle v. Commonwealth*, 686 S.W.3d 105, 112 (Ky. 2023) (quoting *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994)). In determining admission under KRE 404(b), "the trial court must consider whether the evidence is relevant, probative of the prior bad act, and whether its potential prejudice substantially outweighs any probative value." *Id.* Additionally, in criminal cases, KRE 404(c) requires that "if the prosecution intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence."

This Court reviews allegations of evidentiary error for an abuse of discretion. *Leach v. Commonwealth*, 571 S.W.3d 550, 553 (Ky. 2019). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Less than a week before the start of trial, the Commonwealth gave notice under KRE 404(c) of its intent to introduce the challenged other acts evidence.

13

Hernandez Mendez alleges the Commonwealth had been in possession of this evidence for over eighteen months and thus, the notice of its intent to use such evidence was untimely. He therefore argues the evidence should have been excluded.

The Commonwealth is required under the rule to "give reasonable notice to the defendant of its intention to offer" other bad acts evidence. The purpose of the notice requirement in KRE 404(c) is to permit the defendant to file a motion *in limine* challenging the admission of the proposed evidence. *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005). A defendant's filing of such a motion acknowledges the Commonwealth's possession of KRE 404(b) evidence which it intends to introduce at trial and evidences an opportunity to challenge the reliability and prejudice associated with any such evidence. Further, even in the absence of such a motion, this Court has concluded a defendant's receipt of the evidence in discovery operates as actual notice to satisfy KRE 404(c). *Id.* at 20.

Here, the Commonwealth provided all of the other bad acts evidence to Hernandez Mendez during discovery, many months before trial was scheduled to commence. Thus, as noted by the trial court, the challenged evidence was "not new discovery" which was sprung on him at the eleventh hour. Hernandez Mendez plainly had actual knowledge of the Commonwealth's possession and knowledge of the evidence. In addition, Hernandez Mendez did, in fact, file a motion *in limine* to exclude all of the KRE 404(b) evidence and presented argument relative to the Commonwealth's allegedly tardy notice. We agree with

14

the trial court that the Commonwealth's provision of discovery and notice of its intent to present the other bad acts evidence sufficiently conformed to the "reasonable notice" requirements of KRE 404(c). Having concluded the Commonwealth did not run afoul of the notice provisions of KRE 404(c), we turn to the admissibility of the challenged evidence.

The Commonwealth first indicates it sought to provide evidence of physical abuse by Hernandez Mendez against the twins and their mother to explain the girls' fear of him which could provide the jury a reason for a delayed disclosure of the sexual abuse. Although forcible compulsion was not an element of the charged crimes, the Commonwealth contends Hernandez Mendez's violent behavior was so inextricably intertwined with other evidence that it could not be separated without a serious adverse effect on the case. Additionally, the Commonwealth notes its intent to introduce evidence of the physical abuse was to provide the jury with a complete picture of the crimes committed.

Hernandez Mendez claims the physical abuse had no relevance to the charged crimes as it was not what compelled M.R. to engage in the sexual acts nor prevent her from making a disclosure. Because it did not tend to prove an element of a sexual assault offense or intimidating a participant in the legal process, nor did it provide any context necessary to present a full and fair understanding of the events, Hernandez Mendez asserts the trial court should not have allowed the evidence to be admitted.

15

We agree with the Commonwealth. The evidence of his prior physical abuse was not introduced to prove Hernandez Mendez's character or for any other improper purpose. Rather, it tended to give the jury a complete picture of the case and to give insight into the victim's state of mind, thereby providing necessary context. Absent this evidence, the jury would be left to wonder what prompted M.R.'s stated fears of Hernandez Mendez or the circumstances surrounding her belief he would follow through on his threats should she make a disclosure of the sexual abuse. "KRE 404(b)(2) allows the Commonwealth to present a complete, unfragmented picture of the crime and investigation." *Adkins v. Commonwealth*, 96 S.W.3d 779, 793 (Ky. 2003) (citing Robert G. Lawson, *Kentucky Evidence Law Handbook* § 2.25 at 96 (3d ed. Michie 1993)). The evidence was probative and relevant, and any prejudicial effect did not outweigh its probative value. *Riggle*, 686 S.W.3d at 112.

The Commonwealth also noticed its intent to introduce evidence that Hernandez Mendez would provide the girls' mother with some substance that would cause a deep sleep prior to taking M.R. to the basement to commit the sexual assaults. As before, this evidence was intended to give the jury a complete picture of the crimes and to reveal how Hernandez Mendez could accomplish his dastardly deeds while there were other adults present in the house. Additionally, the Commonwealth's notice indicated its intent to introduce evidence that Hernandez Mendez gave M.R. special treatment in an effort to groom her and make her more relaxed or amenable to his sexual desires, once again to provide appropriate context for the jury's consideration.

16

In his brief to this Court, Hernandez Mendez presents no argument relative to the trial court's admissibility of these two classes of evidence. On the contrary, he asserts no evidence was adduced at trial to corroborate M.R.'s testimony and neither subject was relevant to the charged offenses. He makes little more than a glancing blow in raising his challenges, offering only conclusory assertions with no supporting authority.

> We will not search the record to construct [the defendant's] argument for him, nor will this Court undergo a fishing expedition to find support for underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors."

*Applegate v. Commonwealth*, 577 S.W.3d 83, 90 (Ky. App. 2018) (quoting *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979)).

Ultimately, we discern no abuse of discretion in the trial court's admission of the KRE 404(b) evidence. Hernandez Mendez is thus not entitled to the relief he seeks.

### IV. Lesser-included instructions were unwarranted.

Finally, Hernandez Mendez argues the trial court erred in denying his request to instruct the jury on sexual abuse in the first degree as lesser-included offenses to two of the charges of sodomy in the first degree. Again, we disagree.

> Under RCr[6] 9.54, a trial court must "instruct the jury in writing on the law of the case." This Court has repeatedly interpreted this rule to require "instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Turner v. Commonwealth*, 544 S.W.3d 610, 625 (Ky. 2018). While the trial

---

[6] Kentucky Rules of Criminal Procedure.

court must instruct on every issue of fact raised by the evidence and material to the defense, the jury should be instructed on lesser included offenses "only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Holland v. Commonwealth*, 114 S.W.3d 792, 802 (Ky. 2003) (internal citations and quotation marks omitted). In other words, "the trial court has no duty to instruct on theories of the case that are not supported by the evidence." *Sanders v. Commonwealth*, 301 S.W.3d 497, 500 (Ky. 2010).

*Stieritz v. Commonwealth*, 671 S.W.3d 353, 370 (Ky. 2023). Further, "a trial court does not have a duty to instruct on a lesser-included offense simply because a defendant requests it." *Exantus v. Commonwealth*, 612 S.W.3d 871, 888 (Ky. 2020). We review a trial court's decision on whether to instruct on a given claim for an abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by Univ. Med. Ctr. V. Shwab*, 628 S.W.3d 112 (Ky. 2021).

To be guilty of sodomy in the first degree under KRS[7] 510.070, a defendant must engage in deviate sexual intercourse with another either by means of forcible compulsion or with a victim who is incapable of consent because the victim is physically helpless or under twelve years of age. By contrast, sexual abuse in the first degree requires only sexual contact rather than deviate sexual intercourse. KRS 510.110. Deviate sexual intercourse is defined in KRS 510.010(1) as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another" while sexual contact

---

[7] Kentucky Revised Statutes.

is defined in KRS 510.010(7) as "the touching of a person's intimate parts or the touching of the clothing or other material intended to cover the immediate area of a person's intimate parts[.]"

Hernandez Mendez asserts he was entitled to have the jury instructed on sexual abuse in the first degree on two of the sodomy counts because the jury could have interpreted the evidence as him having touched M.R.'s anus with his penis and fingers but that no penetration occurred. He believes M.R.'s testimony was sufficiently vague to permit the jury to make either inference.

Over four decades ago, this Court succinctly and explicitly held that "while penetration may be present in certain cases, and is a necessary element of rape (see KRS 510.040-510.060), it is not necessary to the crime of sodomy as defined in the Kentucky Penal Code." *Hulan v. Commonwealth*, 634 S.W.2d 410, 410 (Ky. 1982). *See also Miller v. Commonwealth*, 283 S.W.3d 690, 699 (Ky. 2009) ("The only requirement [under the sodomy statute] is contact."); *Bills v. Commonwealth*, 851 S.W.2d 466, 470 (Ky. 1993) ("Penetration is not a requirement under the sodomy statute.").

Pertinent to the two sodomy counts at issue, M.R. testified Hernandez Mendez's private part touched her "where [she] pee[s] and [she] poop[s]." She further stated he placed his penis in her mouth and anus and that he put his fingers inside her anus and wiggled them around. Although Hernandez Mendez asserts M.R.'s eight-year-old understanding of basic anatomy left room for interpretation by the jury as to exactly what happened, "[a] victim . . . is not required to use technical or anatomically accurate terminology in describing

19

sexual abuse to support a conviction for sodomy when the words actually used are clear." 70C Am. Jur. 2d *Sodomy* § 54 (2023).

Based on the evidence presented, there was insufficient proof to support an instruction regarding the lesser charges. And we cannot conclude the jury could have reasonably found Hernandez Mendez guilty of sexual abuse but not guilty of the greater crime of sodomy. Thus, the trial court did not abuse its discretion in refusing to instruct the jury on the requested lesser-included offenses.

## CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. Lambert, C.J.; Bisig, Goodwine, Keller, and Thompson, JJ., concur. Conley, J., concurs in result only without separate opinion.

COUNSEL FOR APPELLANT:

Christopher B. Thurman
Assistant Public Defender

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Graham Pilotte
Assistant Solicitor General